76820, 76821. WHITAKER et al. v. ZIRKLE et al.
(374 SE2d 106)

POPE, Judge.

In May 1978, Sarah E. Zirkle became suspicious of a mole on her back and visited her physician to have it removed and analyzed. The tissue was examined by Dr. James Q. Whitaker, a pathologist, who diagnosed it to be non-malignant. In reliance upon the favorable diagnosis, Mrs. Zirkle sought no further treatment. The record shows Mrs. Zirkle remained free of any cancer symptoms until May or June of 1985 when she noticed bruises and nodules on her body. A biopsy of tissue from the affected area revealed metastatic cancer. A re-examination of the tissue sample taken in 1978 revealed the presence of malignant melanoma cancer cells. Mrs. Zirkle's treating physician diagnosed her condition as metastatic melanoma originating from the site of the mole removed in 1978. Mrs. Zirkle underwent treatment for the cancer but eventually died.

On May 7, 1986, within one year from the diagnosis of cancer, Mrs. Zirkle and her husband, Raymond Zirkle, filed separate actions for alleged medical malpractice against Dr. Whitaker, the professional association of which he is a member, the Hospital Authority of Houston County and The Medical Center of Houston County. After Mrs. Zirkle's death her complaint was amended to substitute as plaintiff Raymond Zirkle, individually and as Executor of the Estate of Sarah E. Zirkle. Mr. Zirkle's separate complaint, which originally alleged loss of consortium, was amended to add a claim for wrongful death. All defendants jointly filed a motion for summary judgment in the action brought on behalf of the estate (Case No. 76821) on the ground the claim for the decedent's pain and suffering was barred by the ap-

plicable statute of limitation. An identical motion for partial summary judgment was filed in the action brought by Raymond Zirkle (Case No. 76820) in regard to the claim for loss of consortium. Defendants did not assert a statute of limitation defense to that action's claim for wrongful death. The Medical Center of Houston County (hereinafter "Hospital") filed a motion for summary judgment in both actions contending it was not liable for the acts or omissions of Dr. Whitaker because he was not an agent or employee of the Hospital. All motions were denied and defendants brought these appeals, which were consolidated for consideration.

1. At the time Mrs. Zirkle's cancer was diagnosed, Georgia law permitted a patient to bring a medical malpractice claim within two years from the date of the injury caused by an alleged negligent act. See *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984). Subsequently, the applicable period of limitation was changed by the legislature to include a period of ultimate repose for medical malpractice claims beyond which no action may be brought. Pursuant to OCGA § 9-3-71 (b), no action for medical malpractice may be brought after five years from the date of the alleged negligent act even if the injury arising from that act did not occur within five years. However, in the non-codified Section 3 of the 1985 Act amending the applicable statute of limitation, the legislature provided a grace period for existing actions which would otherwise be cut off by the statute in order to save it from the prohibition against retrospective application. "No action for medical malpractice which, prior to July, 1985, has been barred by the provisions of Title 9, relating to actions, shall be revived by this Act. No action for medical malpractice which would be barred before July 1, 1986, by the provisions of this Act but which would not be so barred by the provisions of Title 9 in force immediately prior to July 1, 1985, shall be barred until July 1, 1986." Ga. L. 1985, pp. 556, 557 § 3. Thus, the plaintiffs involved in these appeals would be permitted to bring an action for medical malpractice until July 1, 1986, provided their claim was not already barred by the previous law. See *Hill v. Fordham*, 186 Ga. App. 354 (2) (367 SE2d 128) (1988).

The critical issue is when did Mrs. Zirkle's injury occur. In most misdiagnosis cases, the injury begins immediately upon the misdiagnosis due to the pain, suffering or economic loss sustained by the patient from the time of the misdiagnosis until the medical problem is properly diagnosed and treated. See *Edmonds v. Bates*, 178 Ga. App. 69 (342 SE2d 476) (1986). The misdiagnosis itself is the injury and not the subsequent discovery of the proper diagnosis. See *Daughtry v. Cohen*, 187 Ga. App. 253 (1) (370 SE2d 18) (1988). However, in this case the plaintiff suffered no further symptoms of cancer until shortly before cancer was properly diagnosed in 1985, some seven years after

the initial misdiagnosis. Plaintiffs do not allege the misdiagnosis caused Mrs. Zirkle to have cancer; the basis of plaintiffs' claims is that she had cancer all along. The injury complained of is the subsequent metastasis of cancerous cells which remained at the site where the mole was removed. The subsequent metastasis allegedly would not have occurred if the cancer had been properly diagnosed and treated at the time of the original biopsy. When an injury occurs subsequent to the date of medical treatment, the statute of limitation commences from the date the injury is discovered. *Shessel v. Stroup*, supra. Expert testimony submitted by plaintiffs creates an issue as to whether the melanoma which was present in 1978 was localized and unmetastasized. If so, then plaintiff's injury—the subsequent metastasis—occurred at some later date and was first discovered in 1985.

Although the five-year statute of ultimate repose was imposed later in 1985, plaintiffs were allowed a grace period of one year, until July 1, 1986, to bring their claims. Plaintiffs' claims were filed within the grace period and summary judgment was properly denied.

2. The Hospital argues the evidence shows Dr. Whitaker was an independent contractor and not its agent or employee. The Hospital contends it is entitled to summary judgment because it was not liable for the alleged negligence of Dr. Whitaker.

The evidence shows that at the time the 1978 tissue sample was examined, Dr. Whitaker was the sole member of his professional corporation. The professional corporation was under contract to provide pathology services to the hospital. The written contract described the professional corporation as an independent contractor. It provided that the professional employees of the professional corporation were to perform their work free of any direction or control by the Hospital, except that the physicians were to be subject to peer review by the Hospital staff. The professional corporation and its professional employees expressly assumed responsibility for any value judgments rendered by the professional employees in regard to pathology services such as tissue interpretations. Pursuant to the contract, Dr. Whitaker was permitted to offer his services as a consultant to other physicians for his own account, although all charges were to be billed through regular Hospital billing procedures. He was paid a minimum monthly salary for services rendered to the Hospital plus a percentage of billings. None of these provisions are sufficient to impose liability against the Hospital for Dr. Whitaker's professional judgment. See *Overstreet v. Doctors Hosp.*, 142 Ga. App. 895 (2) (237 SE2d 213) (1977); *Pogue v. Hospital Auth.*, 120 Ga. App. 230 (170 SE2d 53) (1969). "A hospital is not liable for the negligence of a physician employed by it where the negligence relates to a matter of professional judgment on the part of the physician when the hospital does not exercise and has no right to exercise control in the diagnosis or treatment of illness or

injury." *Pogue* at 231.

Although the evidence clearly indicates that Dr. Whitaker and his professional corporation were independent contractors of the Hospital, the Hospital was not entitled to summary judgment on the issue of liability pursuant to the doctrine of apparent or ostensible agency. See *Brown v. Coastal Emergency Svcs.*, 181 Ga. App. 893 (3) (354 SE2d 632) (1987), aff'd sub. nom. *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507 (361 SE2d 164) (1987). In order to impose liability pursuant to the doctrine of apparent or ostensible agency, the evidence must show: (1) the apparent principal represented or held out the apparent agent; and (2) justifiable reliance upon the representation led to the injury. *Richmond County Hosp. Auth. v. Brown*, 257 Ga. 507, supra.

The evidence in this case shows Dr. Whitaker's written report on the 1978 biopsy was issued on Hospital stationery showing Dr. Whitaker to be the director of the Hospital's department of pathology. This evidence is sufficient to create a jury issue as to whether the Hospital represented Dr. Whitaker to be its agent. By sworn affidavit, decedent's husband presented evidence that he and the decedent relied upon the reputation and integrity of the Hospital in accepting the accuracy of the report and in seeking no further treatment or diagnosis. On the other hand, in the deposition taken before her death, Mrs. Zirkle testified she received the pathologist's report orally from her treating physician and did not recall being told where the tissue had been sent for analysis. The evidence contained in the record creates an issue for jury determination concerning whether plaintiffs were aware of the Hospital's apparent representation of agency and whether they relied upon that representation to their detriment. Thus, summary judgment was properly denied the Hospital.

*Judgments affirmed. McMurray, P. J., and Benham, J., concur.*

DECIDED SEPTEMBER 20, 1988 —
REHEARING DENIED OCTOBER 6, 1988

*Lynn A. Downey, Russell B. Davis*, for appellants.
*Terrence J. Paulk, John T. Croley, Jr.*, for appellees.